IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

DEBRA D. FARMER,          )
                          )
       Plaintiff,         )
                          )   1:11cv691 (LMB/IDD)
    v.                    )
                          )
NAVY FEDERAL CREDIT UNION,)
                          )
       Defendant.         )

FILED AUG -3 2012

## MEMORANDUM OPINION

Plaintiff Debra Farmer ("Farmer") sued defendant Navy Federal Credit Union ("Navy Federal") under Title VII of the Civil Rights Act of 1964. The Court granted summary judgment in favor of Navy Federal on June 8, 2012, finding that there was not a scintilla of evidence supporting plaintiff's claims. Now before the Court is defendant's Motion for Attorneys' Fees and Costs.

### I. BACKGROUND

Plaintiff, an African-American female, was employed at Navy Federal in the Information Services Division from February 2008 through May 2011. Stipulated Uncontested Facts ("SUF") ¶¶ 1, 3. In the First Amended Complaint, she alleges claims of race-based discrimination and retaliation for engaging in protected EEO activity. The race discrimination claim arose out of an ongoing dispute between plaintiff and a Vietnamese co-worker, Ms. Nguyen, involving comments Ms. Nguyen made about plaintiff's

1

personal life and presence in the office. Plaintiff discussed these issues with Navy Federal management and its Employee Relations office on multiple occasions, including sending an email to Employee Relations in early May 2009 reporting Ms. Nguyen's alleged harassment and plaintiff's view that her immediate supervisor "was racially biased in favor of Ms. Nguyen." Compl. ¶¶ 34-35; SUF ¶ 19. Later that month, both plaintiff and Ms. Nguyen "were counseled by their managers about the need to remain professional in the workplace." SUF ¶ 21.

Although plaintiff received a "meets expectations" rating in her 2010 Performance Appraisal Report ("PAR"), the report also included a comment that plaintiff's interactions with Ms. Nguyen had been "less than professional" and that plaintiff "should be more mindful of her actions and ensure that her communiciations [sic] are professional at all times." SUF ¶¶ 25-26. On March 20, 2010, plaintiff wrote to the Vice President of Employment and Communications requesting removal of the "negative reference" from her PAR. Id. ¶ 29. Plaintiff filed an EEOC charge of discrimination on March 25, 2010, claiming that inclusion of the negative language constituted race-based discrimination and retaliation for her EEO activities. Id. ¶ 32. Plaintiff was notified on April 7, 2010 that the the criticism would be removed from her PAR, but a similar criticism also included in Ms. Nguyen's PAR was never

2

removed. Id. ¶¶ 27-28, 30-31; Dkt. No. 29-15 at 5 (Nguyen PAR). Despite these facts, plaintiff alleges that Ms. Nguyen received preferential treatment related to these incidents because of her race. Compl. ¶ 100.

In Count II, plaintiff alleges that Navy Federal retaliated against her for her contacts with Employee Relations and for filing the 2010 EEOC complaint. As acts of retaliation, plaintiff points to the negative PAR language and the May 2011 termination of her employment, the circumstances of which are discussed further below. Plaintiff also raised a series of minor complaints as examples of retaliation, such as being asked to turn down her cell phone ringer in the office, being advised to pursue training opportunities through the proper channels, given two projects with the same due date, and moved to an undesirable office space "in a high traffic area." Compl. ¶¶ 59, 60, 65, 75.[1]

Before the final pretrial conference, the parties submitted a lengthy list of Stipulated Uncontested Facts which substantially undermined the strength of plaintiff's case. In particular, plaintiff agreed that she "never heard any of her management team make a racially derogatory comment about Blacks

---

[1] Because these events were at most "petty slights or minor annoyances that often take place at work and that all employees experience," they are not actionable under Title VII. Burlington Northern & Santa Fe Ry. v. White, 548 U.S. 53, 68 (2006).

3

or African-Americans." SUF ¶ 12. Plaintiff also admitted that her employment with Navy Federal ended when she "abruptly" left a counseling meeting with her supervisor, "slamming the door on her way out of the conference room...and saying 'I'm f---ing outta here' or similar words." Id. ¶ 63. As she walked by a coworker's desk, plaintiff shouted "Kathy, you are a lying b----." Id. ¶ 64. She continued to use profanity as she gathered her bags at her desk, including saying "you are not God. F--- you mother f---ers," referring to Navy Federal management, and saying loudly "[y]ou want to know what this is, this is a mother f---ing nervous breakdown." Id. ¶¶ 65-68. On her way out of the building, plaintiff turned her employee security badge over to the security guard. Id. ¶ 72. According to the Statement of Uncontested Facts, "Navy Federal issued Ms. Farmer a Personnel Action Form dated May 19, 2011 separating her employment for causing a disruption in the workplace in which she used profanity and for making others feel uncomfortable during that incident." Id. ¶ 73. A second EEOC charge and this lawsuit followed.

## II. DISCUSSION

A. <u>Appropriateness of attorneys' fees</u>

Under Title VII, "the court, in its discretion, may allow the prevailing party...a reasonable attorney's fee (including expert fees) as part of the costs...." 42 U.S.C. § 2000e-5(k).

4

An award of attorneys' fees to a defendant is permissible "upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith." Christiansburg Garment Co. v. EEOC, 434 U.S. 412, 421 (1978). Plaintiff urges the Court not to apply "post hoc reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation." Id. at 421-22.

Giving the plaintiff the benefit of the doubt, there is no basis upon which to find that fees should be awarded from the time she filed her complaint; however, it was abundantly clear before defendant's summary judgment motion was filed that plaintiff's claims were groundless. First, although the complaint includes one count of race discrimination and one count of retaliation, at the final pretrial conference plaintiff's counsel characterized this action as "primarily a Title VII retaliation case" rather than based on an allegation of unlawful discharge. See Apr. 19, 2012 Tr. at 7:6-7. Counsel clarified that Navy Federal's decision to prohibit plaintiff from returning to work after her outburst constituted the claimed act of retaliation, not her actual termination.[2] Id. at

---

[2] Although alleged in the complaint, counsel did not list the negative 2010 PAR language or the other minor complaints as additional acts of retaliation during the final pretrial. See Compl. ¶ 107.

5

7:8-11. This inconsistency as to the nature of plaintiff's case illustrates its weakness. Indeed, on April 11, 2012—more than a week before the final pretrial conference and three weeks before defendant's motion for summary judgment was filed—defendant produced Ms. Nguyen's PAR, which showed that the negative language related to her interactions with plaintiff had not been removed, as it had been from plaintiff's PAR. Def.'s Mem. ¶ 6. This evidence clearly showed that, contrary to plaintiff's claims that she was treated less favorably than Ms. Nguyen, in fact she was treated more favorably, thereby refuting any claim of race-based discrimination or retaliation related to Ms. Farmer's PAR. Despite this evidence and counsel's representation that retaliation was the focus of the case, in her opposition to the motion for summary judgment, plaintiff continued to argue that she was subject to disparate discipline when she received the negative PAR. See Pl.'s Resp. Opp'n Def.'s Mot. Summ. J. at 10-11. This sequence of events drastically undermines plaintiff's position that attorneys' fees are not warranted.

Also on April 11, 2012, defendant provided plaintiff with information regarding thirteen Navy Federal employees who were terminated after using profanity in the workplace. Def.'s Mem. ¶ 5. Ten of these were not African-American. Id. In contrast, plaintiff offered no comparator evidence in support of her

6

claims that her termination and defendant's subsequent refusal to rehire her were done in retaliation for her EEOC activity. Defendant's comparator evidence supported its proffered reason for plaintiff's termination—her profanity-laden outburst—and contradicted any claim that Navy Federal acted for racial or retaliatory reasons.[3] The correction of the PAR and the lack of

---

[3] To establish a prima facie case of retaliation, "a plaintiff must prove that (1) she engaged in a protected activity, (2) the employer acted adversely against her, and (3) there was a causal connection between the protected activity and the asserted adverse action." Hoyle v. Freightliner, LLC, 650 F.3d 321, 337 (4th Cir. 2011). "If a plaintiff puts forth sufficient evidence to establish a prima facie case of retaliation and a defendant offers a non-discriminatory explanation for his termination, the plaintiff bears the burden of establishing that the employer's proffered explanation is pretext." Id. (quoting Yashenko v. Harrah's Casino, 446 F.3d 541, 551 (4th Cir. 2006)) (internal quotation marks omitted).

Defendant was granted summary judgment on this claim because plaintiff could not make out a prima facie case of retaliation, as she could not demonstrate that there was any causal connection between her EEO activity and her termination. She filed her EEO complaint in March 2010 but was not terminated until May 2011, over a year later. Plaintiff claims, but defendant disputes, that she also engaged in protected activity when she complained to Employee Relations in January 2011 that she had to report to a different supervisor while her regular supervisor was on leave. Even assuming arguendo that the January 2011 contact constituted protected activity, the delay between the activity and her termination was too attenuated to establish a causal connection and there is no evidence of retaliatory animus in the interim period. See Pascual v. Lowe's Home Ctrs., Inc., 193 F. App'x 229, 233 (4th Cir. 2006).

Moreover, defendant's comparator evidence clearly established that plaintiff's use of excessive profanity in the office was the legitimate and non-discriminatory reason for plaintiff's termination. Plaintiff could not rebut this argument with

7

any comparators, in conjunction with the absolute lack of any direct evidence of discrimination or retaliation, were fatal to plaintiff's claims.

Moreover, during the final pretrial conference on April 19, 2012, at which Ms. Farmer was present in the courtroom, her counsel explained their theory of the case, and the Court responded:

> [I]f the facts are as have been presented in court today, I don't see how you will survive summary judgment. If an employee in a huff walks off a premises and does what—uses any of the "F" language, shows that degree of improper behavior, especially gives up their badge, if your theory of retaliation is that the employer was unreasonable in not letting that person come back, I don't see how you'll survive summary judgment unless you have instances—and discovery is closed at this point, so you can make that evaluation—if you have instances of other employees who engaged in such similar conduct and were allowed to come back, then you maybe have an argument. Other than that, I don't see how you'll survive it.

Apr. 19, 2012 Tr. at 8:21-9:9. Despite this warning, plaintiff chose to pursue this case, forcing defendant to go to the expense of preparing for summary judgment. Moreover, at the June 8, 2012 hearing on defendant's summary judgment motion, the

---

evidence of pretext and accordingly did not prevail on her retaliation claim.

Plaintiff also alleged in the complaint that the negative PAR constituted retaliation for her contacts with Employee Relations regarding Ms. Nguyen. Again, because the most recent of these contacts was in May 2009, months before the PAR issued, and because the negative reference was promptly removed from her PAR on request, plaintiff could not make out a prima facie case of retaliation.

8

Court advised plaintiff's counsel that after the final pretrial he "should have been on pretty clear notice that it was a very, very thin case." June 8, 2012 Tr. at 16:7-15. Plaintiff's counsel admitted that he received the comparator information from defendant during discovery, but when the Court asked whether counsel had thereafter advised plaintiff that the case was meritless, counsel explained that he and his client "had conversations similar to that regarding many issues, but it was [his] client's decision to pursue the matter...." June 8, 2012 Tr. at 16:17-17:8. Counsel further confirmed that plaintiff had been advised of the possibility of sanctions for pursuing a groundless claim.

Plaintiff correctly argues that awarding attorneys' fees to a prevailing defendant in a Title VII action should be done with caution to avoid deterring plaintiffs from bringing non-frivolous claims, even though they may not ultimately prevail. The Court also recognizes the importance of discovery in employment discrimination cases, when a plaintiff may not have access to all of the relevant evidence at the time the complaint is filed. For these reasons, the Court will deny defendant's motion to the extent that it seeks reimbursement for its attorneys' fees incurred from the commencement of the case. An award of some attorneys' fees is nevertheless appropriate starting from the final pretrial on April 19, because by then

9

plaintiff was clearly on notice that her claims were meritless. Specifically, she knew that the offending language in her PAR had been removed while Nguyen's PAR remained unchanged and she had absolutely no evidence to support a claim of discrimination or retaliation in connection with her termination. Moreover, as discussed above, at the final pretrial conference, the Court explicitly advised plaintiff that her claims likely would not survive summary judgment. Had plaintiff heeded the Court's warning at the final pretrial conference and voluntarily dismissed the case, defendant would have been spared the thousands of dollars spent preparing its summary judgment motion and preparing for trial, which was scheduled to start five days after the summary judgment hearing.[4] For these reasons, the Court finds that as of April 19, 2012, plaintiff and her counsel were aware that her case was meritless. Accordingly, the Court will award defendant its attorneys' fees incurred after the final pretrial conference.

B. Amount of attorneys' fees

A court must assess the proper amount of attorneys' fees by first calculating the "lodestar figure," i.e., the reasonable hourly rate times the number of hours reasonably expended, in

---

[4] Under Local Civil Rule 51, parties must submit proposed jury instructions and voir dire questions to the Court five business days before trial is scheduled to begin. In this case, the parties were required to, and did, file these documents on June 6, 2012, two days before the summary judgment hearing.

10

light of the twelve factors set forth in <u>Barber v. Kimbrell's, Inc.</u>, 577 F.2d 216 (4th Cir. 1978). <u>See</u> <u>Grissom v. Mills Corp.</u>, 549 F.3d 313, 320-21 (4th Cir. 2008); <u>see also</u> <u>Cooper v. Paychex, Inc.</u>, No. 97-1543, 1998 U.S. App. LEXIS 21383, at *37 (4th Cir. Aug. 31, 2008) (applying <u>Kimbrell's</u> factors in Title VII action). Those factors are:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

<u>Kimbrell's</u>, 577 F.2d at 226 n.28. The Court need not address all twelve <u>Kimbrell's</u> factors independently, "because such considerations are usually subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate." <u>Freeman v. Potter</u>, No. 7:04cv00276, 2006 U.S. Dist. LEXIS 65329, at *6 (W.D. Va. Sept. 13, 2006) (citing <u>Hensley v. Eckerhart</u>, 461 U.S. 424, 434 n.9 (1983)). The Court need only discuss in detail "those factors that are relevant to its determination of the reasonable amount of attorney[s'] fees to award in each particular case." <u>Kennedy v. A Touch of Patience</u>,

11

779 F. Supp. 2d 516, 526 (E.D. Va. 2011). "Once the court has subtracted the fees incurred for unsuccessful, unrelated claims, it then awards some percentage of the remaining amount, depending on the degree of success enjoyed by the" prevailing party. Johnson v. City of Aiken, 278 F.3d 333, 337 (4th Cir. 2002).

Navy Federal asserts that it incurred $24,800 in fees associated with preparation for its motion for summary judgment, reply brief, and attendance at the summary judgment hearing[5]; additional fees accumulated while counsel prepared for trial before the summary judgment hearing and briefed the instant motion. See Def.'s Mem. ¶ 15 & Ex. 2. Two attorneys from the firm Isler Dare Ray Radcliffe & Connolly, P.C. ("Isler Dare") worked on behalf of Navy Federal. Founding shareholder Edward Lee Isler, who has twenty-three years of experience in labor and employment law, avers that his standard hourly fee is $375, which was discounted to $300 for this action. Isler Decl. ¶¶ 2-3, 5-6. The second attorney from Isler Dare, Lori Hunt Turner, has practiced with the firm for nearly eight years, also exclusively in the labor and employment field. Id. ¶ 7. Ms. Turner's standard hourly fee is $250, which was discounted to $200 for this action. Id. ¶¶ 8-9. Counsel do not seek fees for

---

[5] In total, defendant represents that it accumulated $92,910 in legal fees over the course of this litigation.

services completed by any other firm staff, including a paralegal. Id. ¶ 12. According to the billing documentation submitted by Isler Dare, beginning on the day of the final pretrial, Turner spent 106.1 hours and Isler spent 42.5 hours to prepare and argue the motion for summary judgment, draft voir dire and jury instructions for the trial, and prepare the motion for attorneys' fees, for a total of $33,970 in fees.

Plaintiff has not contested the number of hours or the hourly rates charged by defense counsel, and the Court finds that these hours and rates are eminently reasonable. Both defense counsel have considerable experience in employment cases and are specialists in the field. As a result of their advocacy, defendant prevailed on all counts. The number of hours spent on the motion for summary judgment was reasonable, particularly for such a labor-intensive stage of litigation. There is no indication that defense counsel has over-litigated this action or that more resources were devoted to it than necessary.

The Court also finds the hourly fees charged by counsel to be extremely reasonable; indeed, even the non-discounted rates of $375 for a founding partner of a specialty firm and $250 for an attorney with 7 to 8 years of experience would have been appropriate. See Grissom v. Mills Corp., 549 F.3d 313, 322-23 (4th Cir. 2008) (finding $335 a reasonable rate for an attorney

13

with 18-19 years of experience and $250 reasonable for an attorney with 6-7 years of experience); see also BP Prods. N. Am., Inc. v. Stanley, No. 1:09cv1147, 2010 U.S. Dist. LEXIS 91496, at *6 (E.D. Va. Sept. 1, 2010), overruled on other grounds, 669 F.3d 184 (4th Cir. 2012) (noting that the "'Grissom Table'...has been upheld as representing acceptable parameters for prevailing market rates in Northern Virginia"). For these reasons, the Court finds the properly-calculated lodestar amount to be $33,970 for services rendered after the final pretrial conference, and that none of the other Kimbrell's factors support any adjustment to this figure.

Defendant also seeks taxation of $1,399.00 in costs pursuant to Fed. R. Civ. P. 54(d)(1) and 28 U.S.C. § 1920. This amount includes $1,369 for the transcription of plaintiff's deposition and $30 for copies of the EEOC files. Def.'s Mem. at 10. These costs are taxable under §§ 1920(2) and (4). Accordingly, the Court will add $1,399 in costs.

Plaintiff argues that she should not be responsible for defendant's attorneys' fees because such an award would cause her "financial ruin." Pl.'s Opp'n at 5. In support of this contention, she points to her 2010 Chapter 7 bankruptcy, which was discharged in February 2011; however, currently, she earns an annual salary of $83,000, which she states yields a net annual income of $60,000. Farmer Decl. ¶¶ 7-8. In her

declaration, plaintiff describes her monthly payment obligations for various living expenses and debts, including rent, utilities, and car payments, which total $3,095.55; however, her net monthly income equals $5,000 ($60,000 divided by 12), leaving a monthly surplus of $1,904.45. Although plaintiff may have expenses in addition to those enumerated in her declaration, the documentation submitted does not indicate dire, or even problematic, finances justifying a reduction in the attorneys' fees award that the Court otherwise finds appropriate. This is especially true since plaintiff is not being held responsible for all of defendants' fees, but merely those that were incurred after the final pretrial conference.

### III. CONCLUSION

For the above-stated reasons, the Court will award attorneys' fees to Navy Federal in the amount of $33,970, representing the fees incurred from the day of the final pretrial conference through the briefing of this motion, and $1,399 in costs. An Order granting defendant's motion in part will issue along with this Memorandum Opinion.

Entered this 3rd day of August, 2012.

Alexandria, Virginia

/s/
Leonie M. Brinkema
United States District Judge

15